IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>ROBERT D. HOLLOWAY, JR.,<br><br>      Defendant. | Case No. 5:18-CR-40065-HLT |

## MEMORANDUM AND ORDER

Defendant Robert Holloway moves for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A). Doc. 39. Defendant argues that the global COVID-19 pandemic, his higher risk as an older Black male, and his ongoing symptoms from contracting COVID-19 warrant a reduction in sentence to time served followed by a supervised-release condition of either home confinement or residence at a halfway house for the balance of his term. For the reasons set forth below, the Court denies the motion.[1]

### I.  BACKGROUND

On December 18, 2018, Defendant pleaded guilty to one count of possession of a firearm by a prohibited person. Doc. 24 at 1-2. He was sentenced to 41 months imprisonment followed by a three-year term of supervised release. Doc. 37 at 2-3. He is currently incarcerated at FCI Victorville Medium I ("FCI Victorville"), and his projected release date is June 12, 2021. Doc. 42 at 2; Doc. 44 at 2.

---

[1] Defendant filed his motion pro se. Counsel later entered her appearance for Defendant and filed the reply to the government's opposition. Although Defendant is now represented by an attorney, the Court construes the arguments in his motion liberally in accordance with the standards for evaluating pro se pleadings. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Defendant is a 33-year-old Black male. He tested positive for COVID-19 on July 23, 2020. Doc. 39-1 at 6. He states in a letter attached to his September 11, 2020 reply brief that he is "still not recovered 100%" and "there are times where different symptoms will occur like shortness of breath, being fatigue[d], irregular heart beats, and at times . . . black splotches in [his] vision." Doc. 44-5 at 2. He adds that he is experiencing intermittent but persistent chest pains, that it is difficult to get medical attention at his facility absent an emergency, and that FCI Victorville is failing to manage an active outbreak of COVID-19. Finally, Defendant contends that he has less than a year on his sentence, that he is rehabilitated, and that the United States Probation Office has approved his proposed housing arrangement with his girlfriend. Doc. 44-4.

## II.     STANDARD

Defendant seeks relief under 18 U.S.C. § 3582. That statute permits a court to modify a term of imprisonment that has begun "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). After considering the factors in 18 U.S.C. § 3553(a), a court may grant relief if it finds that "extraordinary and compelling reasons warrant such a reduction" and that any reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Defendant bears the burden of establishing that compassionate release is warranted, and it is a matter of the Court's discretion. *United States v. Jackson*, 2020 WL 2812764, at *2 (D. Kan. 2020).

The policy statement is found in the United States Sentencing Guidelines § 1B1.13. That policy statement incorporates the "extraordinary and compelling" requirement and adds the requirement that the defendant not be a danger to the safety of any person or the community, as

2

provided in 18 U.S.C. § 3142(g). Application Note 1 to § 1B1.13 lists four reasons that meet the "extraordinary and compelling" requirement, including the serious medical condition of the defendant, the defendant's age, family circumstances, and a fourth catchall for "other reasons."

To establish that a medical condition is an extraordinary and compelling reason, Application Note 1 to § 1B1.13 states that a defendant must either be suffering from a terminal illness, or else suffer from a serious medical condition, functional or cognitive impairment, or age-related deterioration in physical or mental health that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

### III. ANALYSIS

First, the Court finds that Defendant has satisfied the exhaustion requirement. Defendant sent a request for compassionate release to the warden on July 2, 2020. Doc. 39-1 at 9. The warden denied it on July 28, 2020. Doc. 42-1 at 1-2. And Defendant filed the instant motion on August 18, 2020. The parties agree Defendant has exhausted. Doc. 39 at 1; Doc. 42 at 7. And, on this record, the Court finds that Defendant satisfied 18 U.S.C. § 3582's exhaustion requirement.

Second, the Court is not convinced that Defendant faces extraordinary and compelling circumstances. The government notes—correctly so—that the existence of COVID-19 in and of itself is not an extraordinary and compelling reason. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"). But the government also acknowledges that COVID-19 coupled with an inmate who has chronic medical conditions that elevate the inmate's risk of becoming seriously ill may meet the standard of "extraordinary and compelling reasons." Doc. 42 at 12 (stating that "an inmate that presents

with one of the named CDC factors, as confirmed by medical records, and who is not expected to recover from that condition, is deemed to have established an extraordinary and compelling reason allowing for compassionate release").

Defendant contends he satisfies this standard because he tested positive for COVID-19 in July and continues to experience symptoms that the BOP cannot or will not monitor. He explains that these facts in combination with his race put him at a higher risk of negative health outcomes and qualify as a serious medical condition and/or as other reasons that constitute extraordinary and compelling reasons, particularly considering the conditions at FCI Victorville and the Court's sentencing recommendations of halfway-house placement. The Court is not convinced.

The evidence before the Court indicates that Defendant tested positive for COVID-19 in July 2020. But there is no evidence suggesting that Defendant had serious medical complications from COVID-19 at that time. Instead, once he was diagnosed, the records indicate that he was prescribed 650 milligrams of Acetaminophen to be taken orally three times a day for 30 days. Doc. 47-1 at 1. He was scheduled for lab tests and scans and isolation precautions were put in place. *Id.* Thus, it appears he received adequate treatment. He reports that he continues to experience lingering symptoms from COVID-19. But there is no corroborating medical evidence of these symptoms. And although he complains that FCI Victorville either cannot or will not monitor his condition, again he does not provide evidence to substantiate his reports. Rather, the record includes two instances where he sought medical assistance. In the first, he complained of chest pain and the facility responded within a few hours. By his own admission "everything turned out fine." Doc. 44-3 at 1. In the second, he expressed concern about quarantining individuals. Based

on the record, it seems FCI Victorville is managing his condition and providing adequate care for any lingering symptoms.[2]

Defendant contends that his ongoing symptoms in combination with his age and race put him at higher risk. Defendant is a 33-year-old Black male and explains that the CDC has noted that systemic health and social inequities have put racial and ethnic minority groups at increased risk. *See* Doc. 44 at 5.[3] But as the CDC notes, these facts are common to several racial and ethnic minorities and do not, by themselves, render Defendant's circumstances extraordinary. *See United States v. Jackson*, 2020 WL 5231317, at *2 (D. Kan. 2020) (rejecting race, itself, as a risk factor for COVID-19 susceptibility); *United States v. Pullen*, 2020 WL 4049899, at *5 (D. Kan. 2020) (finding a 49-year-old male had not reached an age of particular susceptibility to COVID-19 complications). This is particularly true given that the presentence report states that Defendant advised that he enjoys good health, that he reported no history of any health-related problems, and that he stated that he is not currently prescribed any medications. Doc. 29 at 17. The Court finds that Defendant has not established a serious medical condition or other reason that constitutes an extraordinary and compelling reason for release.

---

[2] Defendant cites the Federal Bureau of Prisons ("BOP") COVID-19 tracker for the claim that, as of September 11, 2020, FCI Victorville reported 116 inmate and 14 staff cases, 233 inmate and 3 staff recoveries, and one inmate death. As of October 15, 2020, FCI Victorville reports 3 inmate and 11 staff cases, 345 inmate and 10 staff recoveries, and one inmate death. BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed Oct. 15, 2020). FCI Victorville has tested 995 inmates, and the current population is 978. *See id*; BOP, *FCI Victorville Medium I*, https://www.bop.gov/locations/institutions/vim/ (last accessed Oct. 15, 2020). The outbreak appears to be managed.

[3] CDC, *Health Equity Considerations and Racial and Ethnic Minority Groups*, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fracial-ethnic-minorities.html (last accessed Oct. 15, 2020).

Third, even assuming Defendant established an extraordinary and compelling reason for his release, the Court finds that the 18 U.S.C. § 3553(a) factors do not warrant release.[4] These factors include (1) the nature and circumstances of the defendant's offense and his history and characteristics; (2) the need that the sentence reflect the seriousness of the crime, respect for the law, just punishment, adequate deterrence, and serve the needs of the public and the defendant; (3) the types of sentences available; (4) the sentencing range for the offense committed; and (5) the need to avoid unwarranted sentence disparities. *See* 18 U.S.C. § 3553(a)(1)-(7).

The Court remembers Defendant's case and his sentencing hearing. Although he pleaded to felon in possession of a firearm, the case started from a narcotics investigation. Law enforcement intercepted a mailed package and made a controlled delivery to the front desk of the hotel where Defendant was staying. After Defendant retrieved the package, law enforcement tried to make contact with him. But Defendant ran, dropped the package, and was subsequently taken into custody. After securing search warrants, officers located marijuana in the package and a firearm (loaded with a round in the chamber and the hammer back), $660.00 in United States currency, and drug paraphernalia in his hotel room. He subsequently pleaded guilty to felon in possession of a firearm and, because of the plea agreement, avoided an 18 U.S.C. § 924(c) charge. The Court varied downward from the guideline range in part because of his remorse and family ties and imposed a below-guideline sentence of 41 months imprisonment.

The Court remembers Defendant's history and family circumstances. His parents separated when he was 10, and his grandparents then raised him and his siblings. His grandparents were active in his life, and Defendant did not experience any abuse. Defendant did not graduate high

---

[4] The government concedes that Defendant "does not necessarily pose a direct and immediate danger to society at large" (Doc. 42 at 15), which addresses the other policy condition of U.S.S.G. § 1B1.13(2).

school but, later in life, obtained his GED and attended some college. He has one son and is an active father. He was (and remains) in a relationship with Melissa Mitchell. The Court vividly remembers Defendant's positive and upbeat outlook on his life. He accepted responsibility and, by all accounts, seemed to be in a healthy relationship with Ms. Mitchell, whom he started dating after the offense conduct. They were making plans for their future, and Defendant appears to be executing on those plans while incarcerated. He is bettering himself, educating himself, and preparing for life after custody with Ms. Mitchell and his son. The Court commends these changes.

But although the Court is sincere in its praise for the changes Defendant has made and does not doubt that he is missed and needed by his family, the Court does not think a reduction in sentence is warranted. His criminal history includes several convictions and, troublingly, his most recent conviction was just eight months before the instant offense conduct, which suggests a lack of respect for the law and raises deterrence concerns. And the facts underlying the instant offense are serious and include a loaded firearm with the hammer back and a round in the chamber in a room scattered with drug paraphernalia. If the Bureau of Prisons determines that the Court's recommendation for placement in a halfway house is appropriate, then it can act on that recommendation. But it remains just that, a recommendation. After considering all the factors, the Court finds that a reduction is not appropriate.

**IV.   CONCLUSION**

THE COURT THEREFORE ORDERS that Defendant's motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) (Doc. 39) is DENIED.

IT IS SO ORDERED.

Dated: October 15, 2020        /s/ *Holly L. Teeter*
                               HOLLY L. TEETER
                               UNITED STATES DISTRICT JUDGE